2010 Ark. 5

**DESOTO GATHERING COMPANY, LLC, Appellant,**

v.

**Janice SMALLWOOD, Appellee.**

**No. 09–386.**

Supreme Court of Arkansas.

Jan. 14, 2010.

Perkins & Trotter, PLLC, by: Julie D. Greathouse, G. Alan Perkins, and Matthew

N. Miller, Little Rock, and Paul F. Dumas, P.A., by: Paul A. Dumas, Morrilton, for appellant.

Lightle & Raney, LLP, by: Susannah R. Streit and Donald P. Raney, Searcy, for appellee.

DONALD L. CORBIN, Associate Justice.

Appellant, DeSoto Gathering Co., LLC, appeals a judgment of the White County Circuit Court issuing a mandatory injunction for removal of a natural gas pipeline and awarding treble damages for trespass to Appellee, Janice Smallwood, as well as court costs, filing fees, service-of-process expenses, and witness fees. Appellant raises four arguments for reversal, contending that it did not trespass as a matter of law because it constructed the pipeline pursuant to a right of way granted by the landowner and mineral rights owner; that Appellee did not prove damages beyond speculation and conjecture; that Appellee did not sufficiently plead treble damages; and that Appellee did not allege or prove irreparable harm sufficient to support the permanent injunction. Jurisdiction is properly in this court as this case presents significant issues needing clarification of the law. Ark. Sup.Ct. R. 1–2(b)(5) (2009). We find merit to Appellant's first point of error, and therefore reverse the judgment and remand for the trial court to dissolve the injunction.

The facts giving rise to this case began in June 2003 when Appellee leased ten acres near Judsonia in White County from Richard and Shirley Chandler, who owned both the mineral and surface estates in sixty acres. The terms of the lease provided that in exchange for one dollar per year and the rescission of a previous contract of sale between the parties, Appellee would use the ten acres as a single-family residence for her natural life or until she abandoned the property. The lease also stated that the lease and Appellee's leasehold interest were subordinate to any existing or future liens or encumbrances placed on the land by the Chandlers. The lease was recorded on the same day it was executed, June 23, 2003.

Two years later in June 2005, the Chandlers leased to Chesapeake Exploration Limited Partnership the mineral rights to their sixty acres, including the ten acres leased to Appellee. A producing natural gas well was drilled on the Chandlers' property. In January 2008 and again in May 2008, the Chandlers granted Appellant a right of way to build a sub-surface pipeline to market the natural gas produced from the sixty acres. The first right of way was recorded on April 9, 2008, and the second was recorded on June 11, 2008.

This suit began on March 21, 2008, when Appellee filed a petition for emergency and permanent injunction, alleging that Chesapeake was preparing to lay a pipeline across her leasehold estate and that in so doing it had trespassed and caused significant damage. Appellee soon filed an amended petition dismissing Chesapeake and naming Appellant, who was hired to construct the pipeline, as respondent. By letter to Appellant dated July 28, 2008, Appellee demanded a formal apology as well as money damages and attorney fees totaling $42,500, which included a demand for treble damages. On October 14, 2008, Appellee filed a second amended petition alleging that sometime after she had filed her initial petition, Appellant had "placed a second pipeline across her property without her permission causing additional significant damage to her property." Although this second amended petition asserted additional damages, it did not include a demand for treble damages.

Appellant moved for summary judgment on October 31, 2008, asserting that as a matter of law it had not trespassed on the surface of the land that Appellee had leased for residential purposes because it entered the land pursuant to a right of way granted by the owner of the surface and mineral estates, Appellee's lessor. Appellee responded to the motion for summary judgment on November 20, 2008. In the brief in support of her response, Appellee did not dispute that Appellant had obtained her lessors' consent to construct the pipeline across the ten acres of her leasehold, but alleged that Appellant was required to obtain her consent as well.

The trial court held a hearing on November 24, 2008, in which it stated that it would hold in abeyance a ruling on Appellant's motion for summary judgment and proceed with Appellee's petition for injunction. During the hearing, the trial court ruled from the bench that the motion for summary judgment was denied. This denial was also stated in the final judgment.

At the hearing, Appellee testified that Appellant had entered upon her leasehold without her consent on at least three occasions and placed two connecting pipelines. Appellee ⌊4presented estimates from a landscaping company of what it would cost to restore the ten acres to its condition prior to the construction of the pipelines. Appellant did not present any evidence at the hearing. During closing argument, Appellee asked the trial court to order removal of the pipelines and to triple the damages to her leasehold.

The trial court ruled from the bench that Appellee's leasehold was "a property interest that must be taken into account to cross the surface." The trial court awarded Appellee $17,307.50 in damages and ordered both sides to present posttrial briefs on the issue of treble damages. In addition, the trial court denied Appellee's request for a permanent injunction to remove the pipelines. However, in a letter ruling dated the next day after the hearing, November 25, 2008, the trial court reconsidered its decision on the injunction and ruled that Appellant remove all pipelines it had placed across Appellee's leasehold. Following the submission of the posttrial briefs on treble damages, the trial court issued a written order dated December 19, 2008, finding that Appellee's July 28, 2008 letter constituted sufficient notice to Appellant that Appellee would be seeking treble damages. Ultimately, the trial court issued a written judgment and mandatory injunction on December 30, 2008, in which it trebled the damages of $17,307.50 to $51,922.50, and awarded court costs, filing fees, service-of-process fees, and witness fees of $365.61; this judgment also issued the mandatory injunction for removal of the two pipelines. This appeal followed.

■ In bench trials, the standard of review on appeal is not whether there is substantial evidence to support the finding of the circuit court, but whether the judge's findings were ⌊5clearly erroneous or clearly against the preponderance of the evidence. *El Paso Prod. Co. v. Blanchard,* 371 Ark. 634, 269 S.W.3d 362 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are within the province of the fact-finder. *Id.*

■ Appellant's first argument for reversal is that the trial court erred as a matter of law in ruling that Appellant committed trespass because Appellant entered the land pursuant to a valid right of way and in accordance with the mineral lessee's right to reasonable use of the surface for development and production of the miner-

als. Appellee conceded below and on appeal that the Chandlers had the right to execute the oil and gas lease and to grant the right of way; however, her position both below and on appeal is that her consent to the right of way was also required.

Appellant contends this case is a property-rights case, and that the relationship and priority of rights to the property in question should determine the outcome of this case. According to Appellant, Appellee's leasehold is servient to Appellant's right of way and to the dominant mineral estate's right to reasonable use of the surface for development and production of the minerals. Appellee responds that the issue in this case is not about servient and dominant estates in land, but rather about whether Appellant was required to obtain her consent to its right of way before entering the property in which she held a lifetime lease. The trial court agreed that Appellee's consent was required, and therefore ruled that Appellant's entry on the leased ten acres without Appellee's consent was a trespass for which Appellee was entitled to treble damages for costs to restore the land to the condition it was in prior to the construction of the pipeline. Despite Appellee's assertion to the contrary, an answer to the issue of Appellee's consent cannot be had without resort to the laws of property, which in turn require us to consult the language of the lease she executed with the Chandlers.

This court recently summarized the well-settled law in Arkansas governing the respective rights of the owner of minerals and the separate owner of the surface as follows:

> The owner of a mineral estate has the right to reasonable use of the surface for developing minerals, and the mineral estate is described as the "dominant" estate while the surface estate is depicted as the "subservient estate." *See, e.g.,*

*Diamond Shamrock Corp. v. Phillips,* 256 Ark. 886, 511 S.W.2d 160 (1974) (holding that the owner of a mineral estate has the right to go upon the surface estate to drill wells and occupy the surface to the extent that it is reasonably necessary). In other words, the mineral owner or his lessee has a right of reasonably necessary surface usage to explore and develop the mineral estate. *See, e.g., Arkansas Louisiana Gas Co. v. Wood,* 240 Ark. 948, 403 S.W.2d 54 (1966).

*Blanchard,* 371 Ark. at 641, 269 S.W.3d at 368–69. The mineral owner's right to reasonable use of the surface for development and production of the minerals exists without any express words of grant and is due in part to the impossibility of reaching the minerals in any other manner. *See Koury v. Morgan,* 172 Ark. 405, 288 S.W. 929 (1926). The mineral owner's right is subject to the rules of reasonable usage of the surface. *Diamond Shamrock Corp. v. Phillips,* 256 Ark. 886, 511 S.W.2d 160 (1974).

The non-mineral lease from the Chandlers to Appellee occurred prior to any severance of the surface and mineral estates; however, by its specific terms, the lease restricted Appellant's use of the ten acres for purposes of a single-family residence. Appellee therefore obtained a restricted-use leasehold interest in the surface. Since the lease was for a restricted surface use, and not a conveyance of the minerals, it operated as a severance of the mineral estate owned by the Chandlers from the leasehold surface estate acquired by Appellee under her residential lease. *See Stanolind Oil & Gas Co. v. Wimberly,* 181 S.W.2d 942 (Tex.Civ.App.1944). As the restricted-use surface lessee, Appellee took her leasehold as a servient estate subject to the burden of a right of way or easement in favor of the dominant mineral

estate, allowing the use of so much of the surface as is reasonably necessary for the development and production of the minerals. *Id.; see also Blanchard,* 371 Ark. 634, 269 S.W.3d 362.

The express language of the non-mineral lease further restricted Appellee's leasehold interest by providing that it was subordinate to any existing or future encumbrances placed on the leased premises by the Chandlers. Paragraph thirteen of the lease provides as follows:

### Subordination of Lease

(13) This lease and Lessee's leasehold interest under this lease are and shall be subject, subordinate, and inferior to any lien or encumbrance now or hereafter placed on the leased premises by Lessor, to all advances made under any such lien or encumbrance, to the interest payable on any such lien or encumbrance, and to any and all renewals and extensions of such leases or encumbrances.

The trial court, however, ruled from the bench that the subordination clause in the lease applied to liens and financial encumbrances only. The court stated, "[t]he way that the Court is interpreting this paragraph is a financial encumbrance. I do not see a physical encumbrance intended by this paragraph, nor did I find such in the lease itself." Appellant challenges this finding because the lease does not contain any language excluding a right of way from the term "encumbrance." We agree that such a finding was clearly erroneous. There is simply nothing in the language of the lease that indicates an intent to subordinate the leasehold solely to financial encumbrances; the language "any lien or encumbrance now or hereafter placed" is clear and unambiguous. Thus, the non-mineral lease was restricted to surface use for a single-family residence, and the

leasehold interest was subordinate to any encumbrance placed on the leased premises.

Based on the foregoing principles of property law governing surface and mineral estates in land, and based on the express terms of the non-mineral lease in question, we conclude that as a restricted-use surface lessee, Appellee's consent to Appellant's right of way or to the entry upon the leased premises for production or development of the minerals was not required. Appellant entered the land pursuant to a right of way and pursuant to the mineral lessee's right to reasonable use of the surface; as such, there can be no trespass. The trial court found that Appellee's consent was required and therefore erred as a matter of law in ruling that Appellant's entry on the ten acres was a trespass.

The trial court based its finding of trespass on a case cited to it by Appellant, *Clark v. St. Louis, San Francisco & New Orleans Railway Co.,* 79 Ark. 629, 94 S.W. 930 (1906). The trial court's reliance on *Clark* was misplaced, however, as that case involved a right of way for purposes of constructing a railway rather than one for constructing a sub-surface pipeline for the production of minerals, as in the present case. Moreover, the damages at issue in *Clark* were for destruction of crops grown on the leasehold, rather than for damages to the surface of the leased premises.

Appellee never alleged, and the trial court never found, that the right of way was invalid for any reason, that Appellant's use of the surface was unreasonable, or that a breach of the covenant of quiet use and enjoyment occurred. Arkansas is a fact-pleading state. Ark. R. Civ. P. 8 (2009). As such, Appellee was required to state sufficient facts in her petition to show entitlement to relief or to sustain the

cause of action. *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002). There being no trespass and no other theory of recovery pleaded or proven, there can be no basis for the award of damages nor for the issuance of a mandatory injunction to remove the pipeline. We must therefore reverse the judgment and remand to the trial court with instruction to dissolve the injunction.

Because we conclude that Appellant's first point for reversal has merit, we need not address Appellant's remaining allegations of error.

Reversed and remanded.

BOWEN, J., not participating in final opinion.